## CALIFORNIA WATER & TELEPHONE CO. v. RAILROAD COMMISSION OF CALIFORNIA et al.

### No. 3668–S.

District Court, N. D. California, S. D.
March 24, 1937.

Bacigalupi, Elkus & Salinger, Chas. de Y. Elkus, and Claude N. Rosenberg, all of San Francisco, Cal., and Philip Storer Thacher, of El Cajon, Cal., for plaintiff.

Ira H. Rowell, Roderick B. Cassidy, and Gilmore Tillman, all of San Francisco, Cal., for defendants.

J. A. Isaacson, City Atty., of National City, Cal., amicus curiæ.

Before WILBUR, Circuit Judge, and ST. SURE and LOUDERBACK, District Judges.

PER CURIAM.

Following complaints by National City and Chula Vista, the Railroad Commission of California, upon its own motion, investigated the rates and service of the Sweet-

water Water Company, now called the California Water & Telephone Company. On December 1, 1933, the commission made an order reducing rates. Plaintiff brought suit for temporary and permanent injunction. A restraining order was issued. Thereafter, upon stipulation, an interlocutory injunction was issued. The case was submitted for decision to a court of three judges upon the record made before the commission, supplemented by affidavits.

The system owned by plaintiff obtains its water by impounding the surface flow of the Sweetwater river and its tributaries. It serves the public in the cities of Chula Vista and National City, a portion of the city of San Diego, and certain unincorporated areas in the vicinity of said municipalities, all in San Diego county, Cal. The average number of consumers is 4,620. The population served is about 20,000 and the area about 5,300 acres. Plaintiff claims that the fair value of its properties used and useful in the conduct of the business is over $3,000,000.

The commission determined that "a rate base developed as follows would be reasonable:

| | |
|---|---|
| Physical Property—Non-landed | $2,000,000 |
| Lands and Rights of Way..... | 150,000 |
| Water Rights................ | 20,000 |
| Cash Working Capital and Material and Supplies......... | 35,000 |
| Total Rate Base............. | $2,205,000" |

In its decision the commission sees "$265,000.00 as a safe conception of annual revenue," and says that the company will earn "slightly more than six per cent on the rate base."

The company points out that the commission "found a rate base predicated on its finding that the historical or original cost of plaintiff's plant, taking land at present values and including an allowance for cash working capital and materials and supplies, was $2,205,000.00. It found that a gross revenue of $265,000.00 would normally be produced under the old rate schedule and that its new rate schedule would reduce this by $29,000.00. Deducting the operating expenses as found by the Commission of $89,602.00 and depreciation, likewise as found by it and based on the sinking fund method, of $17,000.00, leaves a net revenue of $129,398.00. On the rate base of $2,205,-000.00 this net revenue produces a rate return of only 5.8%. * * *"

And in this connection it is asserted by the company that "water rights having an uncontradicted minimum appraised value of at least $250,000 were eliminated and in lieu thereof only $20,000, an alleged historical cost, was allowed;" that "going concern value, having an uncontradicted appraised value of at least $200,000, was entirely disallowed;" that there were also erroneous disallowances for lands and rights of way, for the present value of nonlanded operative properties, for depreciation, uncollectible bills, operating, and other expenses; that adjusting the findings of the commission to correct these alleged disallowances, the rate base would be $2,940,228; that after proper deductions, the net return would be $112,586, which would produce a rate of return of less than 4 per cent. on the rate base of $2,205,000 found by the commission.

Invoking the Fourteenth Amendment, plaintiff attacks the validity of the order fixing the rates, upon the grounds (1) "that the Commission acted in excess of its powers, arbitrarily, and intentionally contrary to law;" and denied the company due process of law in taking the property; (2) that the rates prescribed are confiscatory in that they do not furnish a fair return upon the fair value of the property.

The general principle applicable to rate cases has been so often declared by the United States Supreme Court that it may be said to be axiomatic. "The established principle is that as the due process clauses (Amendments 5 and 14) safeguard private property against a taking for public use without just compensation, neither Nation nor State may require the use of privately owned property without just compensation. When the property itself is taken by the exertion of the power of eminent domain, just compensation is its value at the time of the taking. So, where by legislation prescribing rates or charges the use of the property is taken, just compensation assured by these constitutional provisions is a reasonable rate of return upon that value." West v. Chesapeake & P. Tel. Co., 295 U.S. 662, 671, 55 S.Ct. 894, 897, 79 L.Ed. 1640, and see cases cited in footnote. "To an extent value must be a matter of sound judgment, involving fact data."

Was due process accorded the plaintiff? The plaintiff contends that it was denied due process among other things, because (1) the commission arbitrarily rejected reproduction cost estimates and determined the rates

without considering reproduction costs; (2) the commission arbitrarily rejected the evidence concerning the going-concern value and fixed the rate base without any consideration thereof or allowance therefor; (3) in arriving at its value of the real estate used and useful in plaintiff's business the commission ignored the testimony thereon and arbitrarily fixed the value; and (4) in fixing the valuation of plaintiff's water rights it arbitrarily rejected the testimony as to these values and arbitrarily assigned the value of $20,000 instead of the amount shown by the evidence to be $250,000.

Reproduction costs. We will first consider the question of whether the commission denied due process of law in its determination with reference to reproduction costs. It is true that the value fixed by the commission was within the range of values assigned by the witnesses as the reproduction cost of the system, but as we shall presently show this result was obtained not by consideration of reproduction costs in connection with the other evidence but by rejecting such cost estimates upon the theory announced by the commission that the reproduction cost estimates were unreliable.

A similar situation was recently presented to this court in the case of Pacific Gas & Electric Company v. Railroad Commission of California, wherein we held that a failure to consider reproduction costs in arriving at the fair value of the property of a public utility was a denial of due process, although based upon the contention that the estimates furnished were not reliable, because, in so doing, the commission arrived at its rate without considering one of the elements essential to the proper fixing of the fair value of the property. Pacific Gas & Electric Company v. Railroad Commission, 5 F.Supp. 878. The question involved in that case cannot be distinguished from that involved in the case at bar and the commission has not attempted so to do.

In the case at bar, reproduction cost estimates were submitted by the commission and by the company, and both were rejected. Of the company's estimates the commission said in its decision fixing the rates that they were "nebulous and too speculative as a basis for fixing rates." Of the estimates presented by its own engineers it said, quoting further from the decision:

"With respect to the Commission engineer's reproduction cost estimate, it was shown that certain items of property had been omitted. It was claimed that insufficient overheads were allowed. It was also claimed that 1932 prices were altogether too low for appropriate use in such an estimate looking to the future.

"As may be seen, the testimony on reproduction cost less depreciation ranges from $1,316,726.00 (Commission estimate) to $2,471,491.00 (company estimate). Obviously, both of these amounts can not represent present value, and it is probable that neither of them does.

"Neither the estimates of the company nor the Commission with respect to reproduction cost of the dam should be determinative in fixing a rate base because they are both unsound and impracticable. Major consideration should be given to the historical cost of the property. * * *"

In the decision under the caption "Rate Base. Historical v. Reproduction Values," discussion of the subject begins with these words, "We believe historical rather than reproduction values should determine the rate base herein;" and ends with these, "Due consideration being given to each of these groups of figures, we arrive at the conclusion that the historical cost should be the fundamental basis in finding the rate base, and for this purpose a figure of $2,000,000.00 will reflect our judgment. To this must be added land at its present market value."

As was said by the Supreme Court in West v. Chesapeake & P. Tel. Co., supra, the commission discussed the evidence "only to indicate its disapproval."

This method of determining a rate base is not new with the commission. In the case of Pacific Gas & Electric Co. v. Railroad Commission, 5 F.Supp. 878, supra, this court had occasion to pass upon an order of the commission reducing rates of the utility applicable to its natural gas service. We granted an interlocutory injunction. Thereafter the commission instituted supplemental proceedings. We quote from its opinion therein, dated April 23, 1934 (Opinions and Orders of the Railroad Commission of California, vol. 39, pp. 198, 201, 204) as follows:

"The opinion of the District Court of the United States on the recent motion for interlocutory injunction held that inasmuch 'as the Commission has departed from the rules laid down by the Supreme Court for the determination of a proper rate base, a

hearing of the case de novo is inescapable. In such a situation, it becomes our duty to grant the motion for an interlocutory injunction. * * *'

"The court made specific reference to the observations contained in the Commission opinion that 'During its entire history in establishing reasonable rates for utilities similar to this company, to determine a proper rate base this Commission has used the actual or estimated historical costs of the properties undepreciated, with land at the present market value. Consistent with this, it has used the sinking fund method to determine the allowance for depreciation to be included in operation expenses.' The court then observed 'This theory, which was followed by the Commission in determining a rate base, has been repudiated by the Supreme Court. (citing cases.)' * * *

"The Commission in fixing rates in this matter followed the policy which it has consistently followed during the past twenty-one years in fixing rates for this and like utilities. To determine the proper rate base the Commission used the best available historical cost data reflecting cost of the properties undepreciated with land at market value. Consistent with this it used the sinking fund method to determine the allowance for depreciation to be included in operating expenses."

■ In view of the express finding of the commission in the case at bar that it rejected all the evidence of reproduction cost in arriving at its conclusion it is clear that such rejection and consequent ignoring of reproduction cost in arriving at the fair value of the property denied the plaintiff due process of law.

■ Going-concern value. It has been established by repeated decisions of the Supreme Court that an essential element of the fair value of property used and useful by a public utility in its business as such is its going-concern value. The refusal to consider such an element of value in arriving at its determination of the rate is a denial of due process to the public utility. The matter is thus disposed of by the commission in its decision, quoting the first and concluding sentences upon the subject:

"(B. Going Value.) The company has claimed an addition of $200,000.00 for going value. This is Nenzel's estimate. Again, Bowen was higher with the figure of $225,-000.00. Both figures may be analyzed with ease and readily vanish upon dissection. * * *

"We are unable and unwilling to place any amount upon the 'going value' of this utility in the fixation of rates."

■ It is true that where allowance is actually made for going-concern value which is the reasonable equivalent thereof as in the case of Los Angeles Gas & Electric Corporation v. Railroad Commission, 289 U.S. 287, 53 S.Ct. 637, 77 L.Ed. 1180, that the failure to fix such value under the head of going-concern value is not confiscatory if otherwise allowed. Here there is no contention that going-concern value was allowed either directly or indirectly. The failure to consider such value is a denial of due process of law.

Because of the denial of due process of law in the two respects indicated, namely, the failure to ascertain and consider reproduction cost, and failure to establish or consider going-concern value, a permanent injunction must be issued.

■ In view of our conclusion as to these two important items, it is unnecessary to consider plaintiff's contention with reference to the values of real estate and water rights. With reference to real estate values the determination of the commission upon that factual question would be binding on the court unless the testimony with reference thereto has been arbitrarily rejected or the consideration of the testimony was capricious and arbitrary. The reasons we have already stated make it necessary to permanently enjoin the rates, and it is unnecessary to consider these questions further than to indicate that we have not passed upon the question of real estate value. The same statement will apply also to the value of water rights. The contention is that the evidence presented by the plaintiff upon the matter was arbitrarily rejected and that there is no other evidence before the commission upon this subject and consequently that the fixing of the value at $20,000 rather than at the value testified to by plaintiff's experts was an arbitrary exercise of authority. The matter of fixing the value of water rights which have been appropriated for purposes of public distribution by a public utility in California is one of extreme difficulty, and one that we find it unnecessary to decide.

In addition to what we have stated, it should be noted that the commission did not undertake to determine the essential element

necessary to fix the rates, namely the fair value of the property. If this failure had been inadvertent, and if the entire decision of the Railroad Commission showed that it had in fact determined the fair value of the property and that, for the purpose of its decision, it deemed the finding of a fair rate base the equivalent of a finding of fair value, the decision might be sustained so far as this particular question is concerned. But where the commission declined to consider reproduction cost and announced its intention to fix the rate upon the historical cost, its conclusion that the amount of $2,205,000 is a fair rate base is equivalent to stating that that amount represented the judgment of the commission as to the historical cost of the property. We see no escape from the conclusion that it is a denial of due process to fix the rates of a public utility without ascertaining the fair value of the property.

In view of what we have said it is neither necessary nor proper that we should attempt to fix the fair value of the property upon the record before us nor ascertain whether the rates fixed by the commission are confiscatory. It is sufficient to say that, where the public utility makes a substantial claim to a higher rate of return than allowed it by the commission, and the commission has denied the public utility due process in fixing the rate, a permanent injunction should be granted.

Plaintiff may have decree for permanent injunction as prayed for, and judgment for its costs. Counsel for plaintiff may submit decree and special findings of fact and conclusions of law as provided by Equity Rule 70½.